FILED
2013 Nov-27 PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ANTHONY J. KLATCH II,              )
                                   )
      Petitioner                   )
                                   )
      v.                           ) CIVIL ACTION NO: 1:13-cv-01452-WMA-JEO
                                   )
JOHN T. RATHMAN, WARDEN,           )
                                   )
      Respondent.                  )

## PETITIONER'S RESPONSE TO ORDER TO SUPPLY ADDITIONAL EVIDENTIARY MATERIALS OR LEGAL ARGUMENTS REGARDING RESPONDENT'S MOTION TO DISMISS

Comes now, Petitioner, Pro Se, in response to Order dated November 4, 2013, in order to provide additional evidentiary materials or legal arguments in order for the court to reconsider not dismissing Petitioner's 28 U.S.C. § 2241 motion on the basis of the respondent's response filed October 31, 2013.

### REBUTTAL

As petitioner understands Respondent's response, the primary reason for the court to grant the summary dispostion of Petitioner's § 2241 is due to the fact that the court feels Petitioner has not sought relief from the Bureau of Prisons in the same relief that Petitioner is seeking from the court. However, this is untrue, as Petitioner will outline below.

First, Petitioner requested that his § 2241 be expedited because his § 2241 was time-sensitive with respect to his community confinement placement. This was filed August 15, 2013. The expedite was denied, and then, the court allowed Petitioner's § 2241 to be even further delayed because of the lapse of governmental appropriations. Both of which caused irreparable harm to Petitioner in this regard. Therefore, Petitioner had to simultaneously seek relief through the Bureau of Prisons.

Second, Petitioner has filed the appropriate forms with all members of the Breau of Prisons, which has been designated the following reference numbers 755310-F1, 755310-R1, and 749784-A1. These reference numbers refer to Petitioner's submission of BP-9, BP-10, and BP-11 forms, which have all been rejected. The BP-9 was filed directly with the Warden (755310-F1). The BP-10 was filed directly with the region (755310-R1). The BP-11 was filed directly with the Central Office in Washington, D.C. (749874-A1). The last date of the response in these filings was November 21, 2013, and at present, there are no longer any administrative remedies filed with the Bureau of Prisons in this matter. Thus, Petitioner **has exhausted all administrative remedies**, with the Bureau of Prisons.

Third, Respondent has cited Harris v. Garner (11th Cir. 2000) as cause for disposition as well because the exhaustion stated in the prior paragraph must be done **prior to** filing suit. However, this is an argument that deserves discussion because of time prejudice. To date, Petitioner is now three months into this proceeding with the courts and the breau of Prisons. If petitioner did not seek relief from both parties simultaneously, there wimply would not have been enough time to achieve a result fromt he court. Further, if Petitioenr was to resubmit his § 2241 motion now that he has exhausted all administrative remedies, a three month process in waiting for the court to rule would cause Petitioner irreparable harm and make his requested relief from the original § 2241 motion moot. Therefore, Petitioner feels that he has acted appropriately in this matter.

Lastly, Petitioner wishes to make the court aware that on November 14, 2013, Petitioner's mother spoke to the Community Corrections Manager for the Middle District of Florida, who is now Darlene Tyler. Ms. Tyler advised Petitioner's mother, CHarmaine Maynard, that she would be willing to take Petitioner earlier with a simple email from Petitioner's Camp Case Manager, Ms. Gaston. When Ms. Gaston was presented this information, she cut Petitioner off and said that, "If I resubmit you, I will have to do it for everyone else." What should taht matter? Why is Petitioner's right to twelve months of community confinement being denied when he has already shown, based on his placement of RRC time greater than 180, that

he meets the applicable criteria of the Second Chance Act and the community confinement manager has already stated taht she would be more than willing to provide Petitioner with more community confinement time with a simple resubmission?

**RELIEF SOUGHT**

**Because** Petitioner has exhausted his administrative relief witht he Bureau of Prisons and Because Petitioner does not feel he has time available in resubmitting his § 2241 motion, Petitioner is requesting that the court reconsider its summary disposition order, and in turn, grant Petitioner's original relief, which is to compel the Bureau of Prisons, and specifically, Petitioner's Case Manager, Ms. Gaston, to resubmit Petitioner's community confinement time for December 11, 2013, or if that exact date is unavailable, to resubmit with a wider range of 270-360 days.

Alternatively, Petitioner understands that this Response may be denied by the court, and should that occur, Petitioner is requesting that his original § 2241 is resubmitted to the court in an expedited manner, as the orignal grounds still hold true.  Further, because Respondent is already familiar with the original § 2241 motion, should the court, allow the resubmission, then, Petitioner is requesting that the court direct Respondent to reply within twenty-one days because of time prejudice.

To close, Petitioner has included all originals of the cited forms herein, as well as the replies fromt he various offices of the Brueau of Prisons.

Respectfully Submitted this 22nd day of November, 2013.

By,


_____
Anthony J. Klatch II
Petitioner / Movant

ANTHONY J KLATCH II, 55130-018
TALLADEGA FCI      UNT: C-RDAP      QTR: X02-016L
565 EAST RENFROE ROAD
TALLADEGA,   AL 35160



Regional Administrative Remedy Appeal No. 753310-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal receipted
October 22, 2013.   You are appealing the Warden's response to your institution
Administrative Remedy wherein you request additional placement in a Residential
Reentry Center (RRC).   As relief, you request your RRC placement time be extended.

Pursuant to the Second Chance Act of 2007, Public Law 110-199, the criteria for
pre-release RRC placement requires inmates to be individually considered for
placement using the following five-factor criteria from 18 U.S.C. § 3621(b): (1) The
resources of the facility contemplated; (2) The nature and circumstances of the
offense; (3) The history and characteristics of the prisoner; (4) Any statement by the
court that imposed the sentence: (a) concerning the purposes for which the sentence
to imprisonment was determined to be warranted; or (b) recommending a type of penal
or correctional facility as appropriate; and (5) Any pertinent policy statement issued by
the U.S. Sentencing Commission.

A review of this matter reveals you have a projected release date of December 5,
2014, via 3621E Conditional Release.   Your individual release needs were evaluated
by your Unit Team based on the above five factors, and it was determined you will be
referred for a RRC placement sufficient for your needs.   You were given a RRC
placement date of May 1, 2014, by the Residential Reentry Manager.

Accordingly, this response to your Regional Administrative Remedy Appeal is for
informational purposes only.   If dissatisfied with this response, you may appeal to the
Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC,
20534.   Your appeal must be received in the Office of General Counsel within 30
calendar days of the date of this response.

_____
Date      11/7/13

_____
Regional Director, SERO

Regional Administrative Remedy Appeal No. 753310-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal receipted October 22, 2013.   You are appealing the Warden's response to your institution Administrative Remedy wherein you request additional placement in a Residential Reentry Center (RRC).   As relief, you request your RRC placement time be extended.

Pursuant to the Second Chance Act of 2007, Public Law 110-199, the criteria for pre-release RRC placement requires inmates to be individually considered for placement using the following five-factor criteria from 18 U.S.C. § 3621(b): (1) The resources of the facility contemplated; (2) The nature and circumstances of the offense; (3) The history and characteristics of the prisoner; (4) Any statement by the court that imposed the sentence: (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (b) recommending a type of penal or correctional facility as appropriate; and (5) Any pertinent policy statement issued by the U.S. Sentencing Commission.

A review of this matter reveals you have a projected release date of December 5, 2014, via 3621E Conditional Release.   Your individual release needs were evaluated by your Unit Team based on the above five factors, and it was determined you will be referred for a RRC placement sufficient for your needs.   You were given a RRC placement date of May 1, 2014, by the Residential Reentry Manager.

Accordingly, this response to your Regional Administrative Remedy Appeal is for informational purposes only.   If dissatisfied with this response, you may appeal to the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC, 20534.   Your appeal must be received in the Office of General Counsel within 30 calendar days of the date of this response.

_11/7/13_
Date

Regional Director, SERO

RECEIPT - ADMINISTRATIVE REMEDY

DATE: OCTOBER 28, 2013

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TALLADEGA FCI

TO  : ANTHONY J KLATCH II, 55130-018
      TALLADEGA FCI    UNT: C-RDAP    QTR: X02-016L

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 753310-F1
DATE RECEIVED   : OCTOBER 11, 2013
RESPONSE DUE    : OCTOBER 31, 2013
SUBJECT 1       : RELEASE PLANS - APPROVAL, GRATUITY, SUPERVISION
SUBJECT 2       :

RECEIPT - ADMINISTRATIVE REMEDY

DATE: OCTOBER 28, 2013

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : ANTHONY J KLATCH II, 55130-018
      TALLADEGA FCI     UNT: C-RDAP     QTR: X02-016L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 753310-R1
DATE RECEIVED  : OCTOBER 22, 2013
RESPONSE DUE   : NOVEMBER 21, 2013
SUBJECT 1      : RELEASE PLANS - APPROVAL, GRATUITY, SUPERVISION
SUBJECT 2      :

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 29, 2013

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ANTHONY J KLATCH II, 55130-018
      TALLADEGA FCI     UNT: C RDAP     QTR: X02-016L
      565 EAST RENFROE ROAD
      TALLADEGA, AL 35160

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 749784-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED   : OCTOBER 17, 2013
SUBJECT 1       : RESIDENTIAL REENTRY CENTER REFERRALS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL. YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,   REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.



RECEIVED
NOV 0
WARDEN'S OFFICE
FCI TALLADEGA, AL

**U.S. Department of Justice**

**Bureau of Prisons**

**Central Office Adm̲ ̲trative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: KLATCH II, ANTHONY J

| 55130-018 | X02-016L | F.P.C. Talladega |
|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

### Part A—REASON FOR APPEAL

As can be reviewed from the rejection notice enclosed, which was returned from the Southeast Regional Office with remedy ID #: 749784-R1, my BP-10 was rejected because a BP-9 was not filed prior to the BP10. However, as can be seen in Exhibit A coupled with my counselor's recommendation, BOP Program Code states that if a BP-9 is about the Warden or about an issue "sensitive" to the Warden, then, an imate can file directly with the Regional office via a BP-9 or A BP-10. Thus, the region's rejection notice is invalid, since the BP-10 was filed after reaching an impass directly with the Warden's matter regarding the requeted relief, and filing a subsequent BP-9 with his office would have been redundant. Thus, inmate has acted appropriately.

As such, inmate requests that the central office override the Warden and the region in the matter submitted in the rejected BP-10, which is to resubmit the inmate, Anthony J. Klatch II, for additional community confinement time ("halfway house time.") Moreover, inmate is asking that this resubmission be for a specific date of December 11, 2013, and if that date is unavailable, then, an increased date range of 270-360 days based on all grounds stated in the BP-10 referenced by remedy ID: 749784-R1. Lastly, should this request be granted, inmate must make it clear that this request be submitted for the same Re-Entry Center in Tampa, Florida.

October 2, 2013
DATE

SIGNATURE OF REQUESTOR

**Part B—RESPONSE**  RECEIVED

OCT 17 2013

Administrative Remedy Office
Federal Bureau of Prisons

| | GENERAL COUNSEL |
|---|---|
| DATE | CASE NUMBER: 749784 |

ORIGINAL: RETURN TO INMATE

**Part C—RECEIPT**

CASE NUMBER: _____

| Return to: | | | |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-DIR-11
April 1982

EXHIBIT A

# How to Report an Incident of Sexually Abusive Behavior

It is important that you tell a staff member if you have been sexually assaulted. It is equally important to inform staff if you have witnessed sexually abusive behavior . You can tell your case manager, Chaplain, Psychologist, SIS, the Warden or any other staff member you trust.

BOP staff members are instructed to keep reported information confidential and only discuss it with the appropriate officials on a need to know basis concerning the inmate-victim's welfare and for law enforcement or investigative purposes.

There are other means to confidentiality report sexually abusive behavior if you are not comfortable talking with staff.

• Write directly to the Warden, Regional Director or Director. You can send the Warden an Inmate Request to Staff Member (Cop-out) or a letter reporting the sexually abusive behavior. You may also send a letter to the Regional Director or Director of the Bureau of Prisons. To ensure confidentiality, use special mail procedures.

• File an Administrative Remedy. You can file a Request for Administrative Remedy (BP-9). If you determine your complaint is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, you have the opportunity to file your administrative remedy directly with the Regional Director (BP-10). You can get the forms from your counselor or other unit staff.

*Nature of complaint irrelevant*

• Write the Office of the Inspector General (OIG) which investigates   allegations of staff misconduct. OIG is a component of the Department of Justice and is not a part of the Bureau of Prisons. The address is:

## Office of the Inspector General
## P. O. Box 27606
## Washington, D.C. 20530

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 16, 2013

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : ANTHONY J KLATCH II, 55130-018
      TALLADEGA FCI     UNT: C-RDAP     QTR: X02-016L
      565 EAST RENFROE ROAD
      TALLADEGA,   AL 35160

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 749784-R1      REGIONAL APPEAL
DATE RECEIVED  : SEPTEMBER 16, 2013
SUBJECT 1      : RESIDENTIAL REENTRY CENTER REFERRALS
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                AT THIS LEVEL.

**U.S. Department of Justice**                    **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: ___Klatch II. Anthony___    ___55130-018___    ___XOA-01S___    ___FPC Talladega___
       **LAST NAME, FIRST, MIDDLE INITIAL**    **REG. NO.**    **UNIT**    **INSTITUTION**

### Part A—REASON FOR APPEAL

I have reached an impass in my discussion with the Warden here at FCI Talladega with regards to obtaining request relief. The relief I am seeking is in regards to receiving a full 12-month time allocation to a community confinment facility. My Case Manager, refused to submit for my full time eligibility, which is why I have sought remedy through the Warden. However, based on Exhibit A, the Warden has refused to successfully rebut all my claims and my grounds that are relevant towards this eligibility. Thus, I am forced to contact the regional office in this matter.

I am requesting that the region overrule the Warden, and ask the CCM for my jurisdiction, Mr. Jon Gaither, to provide me with a specific date to begin commuity confinement. The earliest date I would be applicable for is December 11, 2013. Further, Exhibit B, includes the letter I have sent directly to Mr. Gaither, when I was first placed for community confine-ment time allocation. Therefore, I have done everything and exhausted every applicable Bureau of Prisons remedy in seeking the requested relief for which I believe I have severely justifiable grounds, which are expounded upon in the enclosed exhibits.

___September, 10, 2013___                      _(signature)_
      **DATE**                           **SIGNATURE OF REQUESTOR**

### Part B—RESPONSE



RECEIVED
SEP 16
REGIONAL COUNSEL'S OFFICE-SERO
BUREAU OF PRISONS

_____            _____
      **DATE**                          **REGIONAL DIRECTOR**

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                   CASE NUMBER: _____

### Part C—RECEIPT

                                        CASE NUMBER: _____

Return to: _____
      **LAST NAME, FIRST, MIDDLE INITIAL**    **REG. NO.**    **UNIT**    **INSTITUTION**

SUBJECT: _____

                                                **BP-DIR-10**
      **DATE**              **SIGNATURE, RECIPIENT OF REGIONAL APPEAL**     **April 1982**

EXHIBIT A

WARDEN'S CORRESPONDENCE

After talking to my counselor and
Because I am dealing with
the warden directly, this exhibit
is Submitted in lieu of any
BP-9 filing,

A 1

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

---

FROM: Warden
TO: 55130018
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/10/2013 09:57:02 AM

*NO! INSUFFICIENT REPLY!*

Your concerns have been addressed.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/10/2013 7:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

I am mystified between the contradiction between your past two responses on this issue. Yesterday morning, you indicated that you would be amenable to placing me in for a full one-year reconsideration should you receive a copy of my job offer, which I asserted that you should already be in possession. Then, you decided to change your mind in that regard later in the day by citing statutory law that is all based on subjective criteria. I have come to learn that my new case manager, Ms. Gaston, was inundated with similar requests yesterday, but I believe that those other requests did not have same grounds as mine. Thus, I hope other inmate's actions did not cause interference with this discussion.

Next, because of the subjectivity within 3621(b), I was hoping that you would find the job offer "Extraordinary and Compelling" enough because I am only seeking an additional 90-120 days. The difference between having a job and not having a job is the number one cause of recidivism according to already referenced research. Further, because I have decided to pursue formal legal action in this regard, I am very familiar with all requirements of 3621(b), and since we have now acquiesced to quoting law, then, my rebuttal in this matter must begin 18 U.S.C. 3621(b), and continue with 42 USC Subsection 17541 (a)(2)(A), 17541 (a)(2)(B), and 17541(a)(2)(D), which suitably rebut my 7-month allocation and make me eligible for a full 12-months.

To begin 18 USC 3621(b)(5) asserts that the CCM and the Referring Institution must take into account and review ALL U.S.S.G. Commission Statements/Recommendations when placing someone for a community confinement allocation. If that held true in my case, then the U.S.S.G. Commission's statement dated March, 2011 is applicable. In that statement, entitled "Alternatives to Incarceration: Specific Offender Characteristics," because of the nature of my crime (white-collar and non-violent) coupled with my mental illness (regardless of severity), I should be considered for the MAXIMUM amount of community confinement time. Furthermore, 42 U.S.C. (a)(2)(A) must be the primary citation here, which states that the MAXIMUM amount of time should be considered for ALL inmates regardless of any of the subjective criteria under 3621(b).

Next, under 42 USC 17541(a)(2)(D), this statute deals with inmates that have physical or mental illness issues. This statute does not delineate between severity of illnesses, and it simply states that ANY inmate suffering from ANY type of condition should be afforded the MAXIMUM amount of community confinement time. Because I have been proactive about mental healthcare since my incarceration, I feel this is extremely applicable in this decision making process, and again, I do not feel Mr. McQueen utilized this in his decision making process despite me discussing this with him. Further, I believe proper mental healthcare is aligned with a reduction in my recidivism risk. However, when I spoke to the interim-head Psychologist, Dr. Stinson, on June 12, 2013, she advised me that she was NOT able to provide me with one-on-one psychological counseling at this time, which I feel is needed for my reintegration with society. Therefore, my psychological needs would be better met outside of the prison environment, where I can seek one-on-one counseling. I feel it is important to note my job offer will also provide me with healthcare coverage.

Lastly, your rebuttal states that I am a low recidivism risk, which seems to, ironically, disqualify me for more halfway house time. Although I understand the the BOP takes higher risk inmates into consideration for more time, I feel that this modus operandi is completely contradictory to statutory law. Under 42 U.S.C. Subsection 17541 (a)(2)(B), inmates that have been proactive in their incarceration should be considered for the MAXIMUM amount of community confinement time. Warden, in your rebuttal, you, yourself, state how proacive I have been in the community by referencing and I quote "good character by participating in programming, the CHOICES program, Rdap..." Therefore, your comments alone validate that I should be considered for the MAXIMUM time under statutory law.

Thus, I believe I have successfully demonstrated an effective rebuttal, and I humbly ask for you to reconsider your decision. To be honest, Warden, I am simply scared about my future should I not have this job to fall back on, which is why I am being relentless in this regard. However, should you not reconsider, I am hopeful the court will also rule favorably on my behalf with the outstanding 2241 submission that I have filed with the Northern District of Alabama.

A.2

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

--------------------------------------------------------------------------------------

Kind Regards,

Anthony J. Klatch II

P.S. (This email chain has reached the 13,000 character limit so any response may require you to start a new email header.)
-----Warden on 9/9/2013 4:52 PM wrote:

>
Mr. Klatch,

The BOP?s goal is to place inmates in RRC's for the amount of time
necessary to provide the greatest likelihood of successful re-entry into
the community. BOP staff are making inmates? pre-release RRC placement
decisions on an individual basis based on the criteria found in 18
U.S.C. ? 3621(b), which includes, but is not limited to, the following:

- the inmate?s need for re-entry services
- the resources and ability of the RRC to meet the offender?s needs
- the nature and circumstances of the inmate?s offense
- the inmate?s history
- any statement by the sentencing court regarding a period of community
confinement
- any potential risks to public safety
- the need for the BOP to manage the inmate population in a responsible
manner
Because the Second Chance Act prescribes the maximum amount of time for
which inmates are eligible for pre-release RRC placement as 12 months,
BOP staff are reviewing each inmate for pre-release RRC placement 17-19
months before the inmate?s projected release date (December 5, 2014). An
RRC placement beyond 6 months should only be approved upon a showing of
an inmate?s extraordinary and compelling re-entry needs. The BOP will
continue to balance each inmate?s individual needs with the agency?s
duty to use its limited resources judiciously and to provide re-entry
services to as many inmates as possible. In your case, you have received
a 7 month RRC placement date on a 60 month sentence. You have shown good
character by participating in programming, the Choices program, RDAP,
and are perceived as having a low chance of recidivism upon release.
After consideration of an increase based upon a job offer, your
placement date of May 1, 2014 will remain and a reconsideration will not
be generated.
I trust I have addressed your concerns.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/9/2013
10:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

Unfortunately, the information listed in your reply is inaccurate and
does not address my concerns. However, I will attempt to provide all
pertinent information in order to move these proceedings to the next
step.

First, in my request to Mr. McQueen, I did discuss, AT LENGTH, the fact
that I had a job awaiting me in Tampa, Florida. However, it appears
that Mr. McQueen did not make note of this in his file. This is the
only explanation I have for why this did not appear in the requst. That
said, because I anticipated an outcome like this based on my experience

4 . 7

--------------------------------------------------------------------------------

with the Unit Team at the camp, I communicated to my employer,
E-Integrate LLC, that they should have their legal counsel, Dixit
Lawfirm, submit paperwork to various offices. These letters have been
sent to your office, Warden, my case manager Mr. McQueen, the CCM's
office, and the Residential Re-Entry Center. I was not aware that Mr.
McQueen did not receive this letter, nor was I aware that you did not
either. However, that law firm and specifically one of the managing
director's of that law firm, Mr. Shyamie Dixit, forwarded those letters
out at my request in June, and after speaking with one of the managers
at E-Integrate LLC, they have told me that it would be fine for anyone
from the BOP to talk to them or Mr. Dixit directly to confirm this job
offer. Mr. Dixit can be reached at 813-992-8113, which is his personal
cell phone, in order to confirm this. Or, my expected manager, Mr.
Chris Wallace, can be reached at 570-582-9955.

Thus, I believe that the statement in your reply which says "This
information should be suppled to your Unit Team, from the employer, in
order for the Unit Team to review and provide the employment date to the
Residential Re-Entry Office, so a request for additional RRC Placement
can be recommnded" has ALREADY been met. Therefore, I suggest that if
your office, Warden, or the Unit Team is NOT in receipt of "this
information" I kindly ask that you contact Mr. Dixit or Mr. Wallace as
soon as possible so that the request for additional RRC placement can be
made.

Please let me know if there is anything futher I can do to help you in
providing me with the requested relief.

Kind Regards,

Anthony J. Klatch II
55130-018
-----Warden on 9/9/2013 9:37 AM wrote:

>

A review indicates your Unit Team conducted a review of RRC placement
on your case utilizing the criteria as outlined in the Second Chance
Act. After review, a request was submitted to the Residential Reentry
Office for a placement range of 181-270 days (6-9 months). The
Residential Reentry Office approved you for a placement date of May 1,
2014, or 219 days (approximately 7 months).

In your request, you indicate you are in need of additional RRC
placement in order to accommodate employment. Review indicates you did
not indicate any employment plan to your Unit Team at the time of their
review on you for RRC placement. Therefore, the Unit Team review, and
the subsequent request to the Residential Reentry Office, did not
indicate any employment plan while at the RRC.

It is recommended you contact the future employer in order to ascertain
a date in which you will need to report for employment. This information
should be supplied to your Unit Team, from the employer, in order for
the Unit Team to review and provide the employment date to the
Residential Reentry Office, so a request for additional RRC placement
can be recommended.

I trust this response addresses your concerns.

$1.4$

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

---------------------------------------------------------------------------------------------

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/5/2013
12:07 PM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden Rathman,

I spoke to you briefly at lunch today regarding an issue with my
halfway house time. As I told you, I was allocated 7 months, which
gives me a release date of May 1, 2014. However, I am seeking 10-12
months because I have a job awaiting me in Tampa, Florida. That job is
high paying and in line with my educational level (B.S. Engineering, MBA
Project Management). However, the job is contractually related, and
that contract begins in January. If I am unable to start the job when
they contract begins, it puts that job offer at risk. This HAS BEEN
communicated via a formal job offer from the law office of Shyamie Dixit
to YOU and to the CCM, Jon Gaither of Wildwood, Florida, as well as the
halfway house directly. What's more, I already have a residence
established for home confinement.

That said, Warden, this issue is extremely important to me. Having a
successful job upon release is paramount to reduction in recividism
risk, and this has been cited countless times by the Sentencing
Committee and the Probation Office. Therefore, I have taken legal
action in this matter, by filing a 2241 motion with the Northern
District of Alabama, which required me to name you as the respondent.
Further, I have filed a compassionate release letter with your office
dated August 19, 2013 utilizing subsections 2 and 7 of Program Statement
5050.49. However, during our brief lunch communication, you stated you
received NEITHER of these letters even though they have been mailed
almost a month hence, and as such, you were going to speak with Mr.
Streeval in this matter. Should we be able to get my halfway house
allocation increased, I will happily be able to dismiss all outstanding
actions.

In closing, Warden, I have done everything possible to get your
attention on this matter, and I am only offering what is already,
legally allowed under congressional law. I am not asking for any type
of special commendation because there are inmates at the camp who you
have aided in giving 10+ months of community confinement time. Lastly,
I graduate from the RDAP program on November 18, 2013, and my earliest
date for release would be December 6, 2013.

Kind regards,

Anthony J. Klatch II
55130-018

EXHIBIT B

CORRESPONDENCE WITH THE CCM FOR THE TAMPA, FLORIDA RRC

Jon Gaither
Community Confinement Manager
6303 County Road 500
Wildwood, FL 34785

Anthony J. Klatch II
55130-018
Federal Prison Camp - Talladega
PMB 2000
Talladega, AL 35160

Mr. Gaither:

I understand that you (or one of the parties copied on this letter) are responsible for allocating my community confinement time ("Halfway House Time"), which was submitted for your approval on June 12, 2013, by my case manager Mr. McQueen at Federal Prison Camp Talladega.  I am writing to you today because there are several Extraordinary and Compelling factors that I ask you to take into consideration when making your decision. Hence, the purpose for writing this letter is to humbly request a full 12-month time allocation, which is available to me under the Second Chance Act.  Further, I am asking for what is available under current law, and I believe this request is necessary in order to eliminate any potential risk for recividism.

To begin, I wish to illuminate you on the complexities of my case, which is non-violent and white-collar in nature.  In my case, the United States pursued civil and criminal action against me.  The civil action, which is out of the Southern District of New York, has led to a complete asset forfeiture and multi-million dollar fines.  That suit along with my criminal libailities have left me with no home, no car, no cash, no community ties to organizations, and a complete razing of my credit.  In fact, even my clothing and my personal affects have been sold, which leaves me much more indigent than most minimum-security offenders.  Despite all of this legal action against me, I wish for you to be made aware that I have cooperated completely with the government on both cases in order to accept my responsibility.  In fact, my cooperation was called "immense" by my Federal Sentencing judge, which warranted a 5K.1 recommendation letter from the U.S. Attorney's office.  I ask for you to take this cooperation into account because I understand that your decision is highly subjective.

Furthermore and most pertinent to this letter, at sentencing, Federal Chief District Judge Steele ordered that I have mandatory mental healthcare during and post-incarceration as part of his sentencing directive.  Thankfully, I do not have any debilitating mental illness, but I do suffer from clinical depression.  As such, Judge Steele felt that dealing with this illness was necessary for me to seek rehabilitation, and I feel that you should know that I am on medication for this illness.  That said, my incarceration thusfar has fulfilled the bare minimum of the Judge's directive, and when I met with the head psychologist at F.P.C. Talladega, Dr. Stinson, on June 12, 2013, she stated that she is NOT available to offer me one-on-one psychological counseling at this time, which again, is something I believe is necessary to reduce recividism.  This anticipated inadequacy is why I have copied Dr. Butterfield, the head of Psychology for the Bureau of Prisons, as part of this letter because my family has been proactive about reaching out to her in order to ensure my proper rehabilitation has been met.  However, what is saddening and what must be acknowledged is that I have a fear that this illness will be used against me in your time calculation decision because I have seen numerous inmates receive reductions in halfway house time for illnesses (mental or physical), whereas, I am seeking more time, which is available to me under statute law 42 U.S.C. 17541 (a)(1)(D).  This provision states clearly that the maximum amount of time should be giving for people with mental illnesses, which although mine is of a manageable nature, it is a disease I have. Also, I believe 42 U.S.C. 17541 (a)(2)(A) is referable here because it too makes me eligible for the full 12-month consideration, due to all of my proactive decisions since my incarceration, which whill be discussed shortly.

1.

B. 2

Thusfar, I have listed the primary reasons for seeking a full year in the Tampa Re-Entry center because they reference statutory law, but I also need to make you aware of several other compelling/extraordinary reasons relating to my family, which is very ill. My father is currently suffering from prostate cancer, and he is in need of having my help for his doctor visits. My step-father has bladder cancer. My mother has muscular Dystrophy, and several other ailments including mental illness. What's more, because of their illnesses, I have not seen any of my immediate family for two-years. Prior to my arrest, I also helped my mother financially, and without my support, she is currently at risk of losing her home. Therefore, I have been proactive in obtaining a job despite being incarcerated in order to help her again as soon as I can, and this segues into the next compelling reason I wish to discuss.

Aside from my family desperately needing me, I have a very high education level (B.S. in Engineering and an M.B.A. from Lehigh University). Therefore, I have been able to pro-cure a job with a high starting salary in the Tampa Bay area for a computer consulting firm. It is my understanding that the Re-Entry Center receives 25% of my gross salary, and I feel that this would be a sizable amount of money relative to other placed inmates. Due to this job offer, my income distributed to the re-entry center would be equal to multiple inmates, and with current budgetary constraints, I feel it is appropriate to mention this aspect of my case despite its contradiction to indigency. However, most attention warrant-ing in this discussion is the fact that this job offer is subject to being lost if I am unable to begin on a project starting in January 2014, which means I would need 11 months of community confinement time. What's more, it is my belief that the loss of this off job offer places me at the highest risk of recividism.

Next, I understand that under the current subjective criteria, high-risk inmates are typic-ally eligible for more community confinement time, which I feel is a contradiction to 42 U.S.C. 17541 (a)(2)(B). In fact, I have been nothing but be pro-active hoping to achieve more halfway house time, and when I learned that NOT getting in trouble is a negative factor in that decision, I was appalled because it is directly against law. It was a slap in the face because as a non-violent, white-collar, first-time offender, I personify alternative sentencing options/community confinement criteria, as stated by the United States Sentencing Commission in their March 2010 report entitled "Alternatives to Incarceration: Specific Offender Characteristics." This statement is something that I believe falls under the United States Sentencing Guidelines via 18 U.S.C. 3621(b)(5), which tells the CCM to review all U.S.S.G. Commission statements/recommendations in making your decision. Thus, by referencing that statute, I wish to make you aware of all of my achievements since my incarceration.

I have been chosen by the assisstant warden and the drug treatment specialists here at Talladega to be par tof the Choices program, whereby I go out and speak to the youth at churches and schools regarding my story, and I am actively involved in this. Also, this si something I wish to continue post-incarceration. I have also become a certified GED teacher/tutor, and I have been a volunteer teacher for many higher-level classes. In fact, I have been an Adult COntinuing Education (A.C.E.) instructor, when I was at F.P.C. Atlanta. I have also been proactive with respect to my physical and mental health. I have lost 80 lbs. since my arrest, and my want for psychiatric rehabilitation has been stressed to you already. I have also received the sacrament of confirmation, by a Catholic priest named Father Larry Shinnick of St. Leo's Church in Demopolis, Alabama. Lastly, I have qualified myself and voluntarily committed myself to the 500-hour Residential Drug Abuse Treatment Program (RDAP), with an expected completion date of November 18, 2013, which would be the earliest date that I would be eligible for community confinement in order to satisfy my 3621(E) obligations.

In closing, Mr. Gaither, I believe I have done everything possible in order to show a want to reform my life, which began with my decision to cooperate with the United States in all aspects of my case, and I have submitted several other criteria, which I believe is

highly important for you to make an informed decision. What's more, if all of these
factors couple with the realization that I have heavy restitutive resposibilities both
criminally and civilly that I can begin making with the job I have available to me, which
would be in the best interests of the victims of my crime, then, I believe that my request
for a full 12-month community confinement, as defined by my eligibility under the acts/
statutes stated herein should be considered seriously without me requesting the courts
to move the Bureau of Prisons in this manner. I look forward to a timely response on
your decision to grant my request for a full 12-month halfway house allocation, and
I also anticipate that you may receive other letters of support on my behalf in order
to substantiate my statements.

Kind Regards,

Anthony J. Klatch II
55130-018

CC:

Charles Samuels Jr. - Director of Bureau of Prisons
Dr. Butterfield - Head Psychologist of Bureau of Prisons
Residential Re-Entry Center - Tampa, FL (Halfway House)
Domingo Soto - Criminal Lawyer
Robert Knuts - Civil Lawyer
Warden Rathman - FCI Talladega
Judge William Steele - Southern District of Alabama

3.

B.4

EXHIBIT A

WARDEN'S CORRESPONDENCE

After talking to my counselor and

Because I am dealing with
the warden directly, this exhibit
is submitted in lieu of any
BP-9 filing.

A.1

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

---------------------------------------------------------------------------------------------

FROM: Warden
TO: 55130018
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/10/2013 09:57:02 AM

*NO! INSUFFICIENT REPLY!*

Your concerns have been addressed.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/10/2013 7:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

I am mystified between the contradiction between your past two responses on this issue. Yesterday morning, you indicated that you would be amenable to placing me in for a full one-year reconsideration should you receive a copy of my job offer, which I asserted that you should already be in possession. Then, you decided to change your mind in that regard later in the day by citing statutory law that is all based on subjective criteria. I have come to learn that my new case manager, Ms. Gaston, was inundated with similar requests yesterday, but I believe that those other requests did not have same grounds as mine. Thus, I hope other inmate's actions did not cause interference with this discussion.

Next, because of the subjectivity within 3621(b), I was hoping that you would find the job offer "Extraordinary and Compelling" enough because I am only seeking an additional 90-120 days. The difference between having a job and not having a job is the number one cause of recidivism according to already referenced research. Further, because I have decided to pursue formal legal action in this regard, I am very familiar with all requirements of 3621(b), and since we have now acquiesced to quoting law, then, my rebuttal in this matter must begin 18 U.S.C. 3621(b), and continue with 42 USC Subsection 17541 (a)(2)(A), 17541 (a)(2)(B), and 17541(a)(2)(D), which suitably rebut my 7-month allocation and make me eligible for a full 12-months.

To begin 18 USC 3621(b)(5) asserts that the CCM and the Referring Institution must take into account and review ALL U.S.S.G. Commission Statements/Recommendations when placing someone for a community confinement allocation. If that held true in my case, then the U.S.S.G. Commission's statement dated March, 2011 is applicable. In that statement, entitled "Alternatives to Incarceration: Specific Offender Characteristics," because of the nature of my crime (white-collar and non-violent) coupled with my mental illness (regardless of severity), I should be considered for the MAXIMUM amount of community confinement time. Furthermore, 42 U.S.C. (a)(2)(A) must be the primary citation here, which states that the MAXIMUM amount of time should be considered for ALL inmates regardless of any of the subjective criteria under 3621(b).

Next, under 42 USC 17541(a)(2)(D), this statute deals with inmates that have physical or mental illness issues. This statute does not delineate between severity of illnesses, and it simply states that ANY inmate suffering from ANY type of condition should be afforded the MAXIMUM amount of community confinement time. Because I have been proactive about mental healthcare since my incarceration, I feel this is extremely applicable in this decision making process, and again, I do not feel Mr. McQueen utilized this in his decision making process despite me discussing this with him. Further, I believe proper mental healthcare is aligned with a reduction in my recidivism risk. However, when I spoke to the interim-head Psychologist, Dr. Stinson, on June 12, 2013, she advised me that she was NOT able to provide me with one-on-one psychological counseling at this time, which I feel is needed for my reintegration with society. Therefore, my psychological needs would be better met outside of the prison environment, where I can seek one-on-one counseling. I feel it is important to note my job offer will also provide me with healthcare coverage.

Lastly, your rebuttal states that I am a low recidivism risk, which seems to, ironically, disqualify me for more halfway house time. Although I understand the the BOP takes higher risk inmates into consideration for more time, I feel that this modus operandi is completely contradictory to statutory law. Under 42 U.S.C. Subsection 17541 (a)(2)(B), inmates that have been proactive in their incarceration should be considered for the MAXIMUM amount of community confinement time. Warden, in your rebuttal, you, yourself, state how proacive I have been in the community by referencing and I quote "good character by participating in programming, the CHOICES program, Rdap..." Therefore, your comments alone validate that I should be considered for the MAXIMUM time under statutory law.

Thus, I believe I have successfully demonstrated an effective rebuttal, and I humbly ask for you to reconsider your decision. To be honest, Warden, I am simply scared about my future should I not have this job to fall back on, which is why I am being relentless in this regard. However, should you not reconsider, I am hopeful the court will also rule favorably on my behalf with the outstanding 2241 submission that I have filed with the Northern District of Alabama.

*A.2*

------------------------------------------------------------------------------------------------------

Kind Regards,

Anthony J. Klatch II

P.S. (This email chain has reached the 13,000 character limit so any response may require you to start a new email header.)
-----Warden on 9/9/2013 4:52 PM wrote:

>
Mr. Klatch,

The BOP?s goal is to place inmates in RRC's for the amount of time
necessary to provide the greatest likelihood of successful re-entry into
the community. BOP staff are making inmates? pre-release RRC placement
decisions on an individual basis based on the criteria found in 18
U.S.C. ? 3621(b), which includes, but is not limited to, the following:

- the inmate?s need for re-entry services
- the resources and ability of the RRC to meet the offender?s needs
- the nature and circumstances of the inmate?s offense
- the inmate?s history
- any statement by the sentencing court regarding a period of community
confinement
- any potential risks to public safety
- the need for the BOP to manage the inmate population in a responsible
manner
Because the Second Chance Act prescribes the maximum amount of time for
which inmates are eligible for pre-release RRC placement as 12 months,
BOP staff are reviewing each inmate for pre-release RRC placement 17-19
months before the inmate?s projected release date (December 5, 2014). An
RRC placement beyond 6 months should only be approved upon a showing of
an inmate?s extraordinary and compelling re-entry needs. The BOP will
continue to balance each inmate?s individual needs with the agency?s
duty to use its limited resources judiciously and to provide re-entry
services to as many inmates as possible. In your case, you have received
a 7 month RRC placement date on a 60 month sentence. You have shown good
character by participating in programming, the Choices program, RDAP,
and are perceived as having a low chance of recidivism upon release.
After consideration of an increase based upon a job offer, your
placement date of May 1, 2014 will remain and a reconsideration will not
be generated.
I trust I have addressed your concerns.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/9/2013
10:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

Unfortunately, the information listed in your reply is inaccurate and
does not address my concerns. However, I will attempt to provide all
pertinent information in order to move these proceedings to the next
step.

First, in my request to Mr. McQueen, I did discuss, AT LENGTH, the fact
that I had a job awaiting me in Tampa, Florida. However, it appears
that Mr. McQueen did not make note of this in his file. This is the
only explanation I have for why this did not appear in the requst. That
said, because I anticipated an outcome like this based on my experience

$A\ 3$

--------------------------------------------------------------------------------------------------

with the Unit Team at the camp, I communicated to my employer,
E-Integrate LLC, that they should have their legal counsel, Dixit
Lawfirm, submit paperwork to various offices. These letters have been
sent to your office, Warden, my case manager Mr. McQueen, the CCM's
office, and the Residential Re-Entry Center. I was not aware that Mr.
McQueen did not receive this letter, nor was I aware that you did not
either. However, that law firm and specifically one of the managing
director's of that law firm, Mr. Shyamie Dixit, forwarded those letters
out at my request in June, and after speaking with one of the managers
at E-Integrate LLC, they have told me that it would be fine for anyone
from the BOP to talk to them or Mr. Dixit directly to confirm this job
offer. Mr. Dixit can be reached at 813-992-8113, which is his personal
cell phone, in order to confirm this. Or, my expected manager, Mr.
Chris Wallace, can be reached at 570-582-9955.

Thus, I believe that the statement in your reply which says "This
information should be suppled to your Unit Team, from the employer, in
order for the Unit Team to review and provide the employment date to the
Residential Re-Entry Office, so a request for additional RRC Placement
can be recommnded" has ALREADY been met. Therefore, I suggest that if
your office, Warden, or the Unit Team is NOT in receipt of "this
information" I kindly ask that you contact Mr. Dixit or Mr. Wallace as
soon as possible so that the request for additional RRC placement can be
made.

Please let me know if there is anything futher I can do to help you in
providing me with the requested relief.

Kind Regards,

Anthony J. Klatch II
55130-018
-----Warden on 9/9/2013 9:37 AM wrote:

>

A review indicates your Unit Team conducted a review of RRC placement
on your case utilizing the criteria as outlined in the Second Chance
Act. After review, a request was submitted to the Residential Reentry
Office for a placement range of 181-270 days (6-9 months). The
Residential Reentry Office approved you for a placement date of May 1,
2014, or 219 days (approximately 7 months).

In your request, you indicate you are in need of additional RRC
placement in order to accommodate employment. Review indicates you did
not indicate any employment plan to your Unit Team at the time of their
review on you for RRC placement. Therefore, the Unit Team review, and
the subsequent request to the Residential Reentry Office, did not
indicate any employment plan while at the RRC.

It is recommended you contact the future employer in order to ascertain
a date in which you will need to report for employment. This information
should be supplied to your Unit Team, from the employer, in order for
the Unit Team to review and provide the employment date to the
Residential Reentry Office, so a request for additional RRC placement
can be recommended.

I trust this response addresses your concerns.

$A.4$

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

-----------------------------------------------------------------------------------------------------

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/5/2013
12:07 PM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden Rathman,

I spoke to you briefly at lunch today regarding an issue with my
halfway house time.  As I told you, I was allocated 7 months, which
gives me a release date of May 1, 2014.  However, I am seeking 10-12
months because I have a job awaiting me in Tampa, Florida.  That job is
high paying and in line with my educational level (B.S. Engineering, MBA
Project Management).  However, the job is contractually related, and
that contract begins in January.  If I am unable to start the job when
they contract begins, it puts that job offer at risk.  This HAS BEEN
communicated via a formal job offer from the law office of Shyamie Dixit
to YOU and to the CCM, Jon Gaither of Wildwood, Florida, as well as the
halfway house directly.  What's more, I already have a residence
established for home confinement.

That said, Warden, this issue is extremely important to me.  Having a
successful job upon release is paramount to reduction in recividism
risk, and this has been cited countless times by the Sentencing
Committee and the Probation Office.  Therefore, I have taken legal
action in this matter, by filing a 2241 motion with the Northern
District of Alabama, which required me to name you as the respondent.
Further, I have filed a compassionate release letter with your office
dated August 19, 2013 utilizing subsections 2 and 7 of Program Statement
5050.49.  However, during our brief lunch communication, you stated you
received NEITHER of these letters even though they have been mailed
almost a month hence, and as such, you were going to speak with Mr.
Streeval in this matter.  Should we be able to get my halfway house
allocation increased, I will happily be able to dismiss all outstanding
actions.

In closing, Warden, I have done everything possible to get your
attention on this matter, and I am only offering what is already,
legally allowed under congressional law.  I am not asking for any type
of special commendation because there are inmates at the camp who you
have aided in giving 10+ months of community confinement time.  Lastly,
I graduate from the RDAP program on November 18, 2013, and my earliest
date for release would be December 6, 2013.

Kind regards,

Anthony J. Klatch II
55130-018

A.S

EXHIBIT B

CORRESPONDENCE WITH THE CCM FOR THE TAMPA, FLORIDA RRC

June 17, 2013

Jon Gaither
Community Confinement Manager
6303 County Road 500
Wildwood, FL 34785

Anthony J. Klatch II
55130-018
Federal Prison Camp - Talladega
PMB 2000
Talladega, AL 35160

Mr. Gaither:

I understand that you (or one of the parties copied on this letter) are responsible for allocating my community confinement time ("Halfway House Time"), which was submitted for your approval on June 12, 2013, by my case manager Mr. McQueen at Federal Prison Camp Talladega. I am writing to you today because there are several Extraordinary and Compelling factors that I ask you to take into consideration when making your decision. Hence, the purpose for writing this letter is to humbly request a full 12-month time allocation, which is available to me under the Second Chance Act. Further, I asm asking for what is available under current law, and I believe this request is necessary in order to eliminate any potential risk for recidivism.

To begin, I wish to illuminate you on the complexities of my case, which is non-violent and white-collar in nature. In my case, the United States pursued civil and criminal action against me. The civil action, which is out of the Southern District of New York, has led to a complete asset forfeiture and multi-million dollar fines. That suit along with my criminal libailities have left me with no home, no car, no cash, no community ties to organizations, and a complete razing of my credit. In fact, even my clothing and my personal affects have been sold, which leaves me much more indigent than most minimum-security offenders. Despite all of this legal action against me, I wish for you to be made aware that I have cooperated completely with the government on both cases in order to accept my responsibility. In fact, my cooperation was called "immense" by my Federal Sentencing judge, which warranted a 5K.1 recommendation letter from the U.S. Attorney's office. I ask for you to take this cooperation into account because I understand that your decision is highly subjective.

Furthermore and most pertinent to this letter, at sentencing, Federal Chief District Judge Steele ordered that I have mandatory mental healthcare during and post-incarceration as part of his sentencing directive. Thankfully, I do not have any debilitating mental illness, but I do suffer from clinical depression. As such, Judge Steele felt that dealing with this illness was necessary for me to seek rehabilitation, and I feel that you should know that I am on medication for this illness. That said, my incarceration thusfar has fulfilled the bare minimum of the Judge's directive, and when I met with the head psychologist at F.P.C. Talladega, Dr. Stinson, on June 12, 2013, she stated that she is NOT available to offer me one-on-one psychological counseling at this time, which again, is something I believe is necessary to reduce recidivism. This anticipated inadequacy is why I have copied Dr. Butterfield, the head of Psychology for the Bureau of Prisons, as part of this letter because my family has been proactive about reaching out to her in order to ensure my proper rehabilitation has been met. However, what is saddening and what must be acknowledged is that I have a fear that this illness will be used against me in your time calculation decision because I have seen numerous inmates receive reductions in halfway house time for illnesses (mental or physical), whereas, I am seeking more time, which is available to me under statute law 42 U.S.C. 17541 (a)(1)(D). This provision states clearly that the maximum amount of time should be giving for people with mental illnesses, which although mine is of a manageable nature, it is a disease I have. Also, I believe 42 U.S.C. 17541 (a)(2)(A) is referable here because it too makes me eligible for the full 12-month consideration, due to all of my proactive decisions since my incarceration, which whill be discussed shortly.

1.

B. 2

Thusfar, I have listed the primary reasons for seeking a full year in the Tampa Re-Entry center because they reference statutory law, but I also need to make you aware of several other compelling/extraordinary reasons relating to my family, which is very ill. My father is currently suffering from prostate cancer, and he is in need of having my help for his doctor visits. My step-father has bladder cancer. My mother has muscular Dystrophy, and several other ailments including mental illness. What's more, because of their illnesses, I have not seen any of my immediate family for two-years. Prior to my arrest, I also helped my mother financially, and without my support, she is currently at risk of losing her home. Therefore, I have been proactive in obtaining a job despite being incarcerated in order to help her again as soon as I can, and this segues into the next compelling reason I wish to discuss.

Aside from my family desperately needing me, I have a very high education level (B.S. in Engineering and an M.B.A. from Lehigh University). Therefore, I have been able to procure a job with a high starting salary in the Tampa Bay area for a computer consulting firm. It is my understanding that the Re-Entry Center receives 25% of my gross salary, and I feel that this would be a sizable amount of money relative to other placed inmates. Due to this job offer, my income distributed to the re-entry center would be equal to multiple inmates, and with current budgetary constraints, I feel it is appropriate to mention this aspect of my case despite its contradiction to indigency. However, most attention warranting in this discussion is the fact that this job offer is subject to being lost if I am unable to begin on a project starting in January 2014, which means I would need 11 months of community confinement time. What's more, it is my belief that the loss of this off job offer places me at the highest risk of recividism.

Next, I understand that under the current subjective criteria, high-risk inmates are typically eligible for more community confinement time, which I feel is a contradiction to 42 U.S.C. 17541 (a)(2)(B). In fact, I have been nothing but be pro-active hoping to achieve more halfway house time, and when I learned that NOT getting in trouble is a negative factor in that decision, I was appalled because it is directly against law. It was a slap in the face because as a non-violent, white-collar, first-time offender, I personify alternative sentencing options/community confinement criteria, as stated by the United States Sentencing Commission in their March 2010 report entitled "Alternatives to Incarceration: Specific Offender Characteristics." This statement is something that I believe falls under the United States Sentencing Guidelines via 18 U.S.C. 3621(b)(5), which tells the CCM to review all U.S.S.G. Commission statements/recommendations in making your decision. Thus, by referencing that statute, I wish to make you aware of all of my achievements since my incarceration.

I have been chosen by the assisstant warden and the drug treatment specialists here at Talladega to be par tof the Choices program, whereby I go out and speak to the youth at churches and schools regarding my story, and I am actively involved in this. Also, this si something I wish to continue post-incarceration. I have also become a certified GED teacher/tutor, and I have been a volunteer teacher for many higher-level classes. In fact, I have been an Adult COntinuing Education (A.C.E.) instructor, when I was at F.P.C. Atlanta. I have also been proactive with respect to my physical and mental health. I have lost 80 lbs. since my arrest, and my want for psychiatric rehabilitation has been stressed to you already. I have also received the sacrament of confirmation, by a Catholic priest named Father Larry Shinnick of St. Leo's Church in Demopolis, Alabama. Lastly, I have qualified myself and voluntarily committed myself to the 500-hour Residential Drug Abuse Treatment Program (RDAP), with an expected completion date of November 18, 2013, which would be the earliest date that I would be eligible for community confinement in order to satisfy my 3621(E) obligations.

In closing, Mr. Gaither, I believe I have done everything possible in order to show a want to reform my life, which began with my decision to cooperate with the United States in all aspects of my case, and I have submitted several other criteria, which I believe is

2.

B.3

highly important for you to make an informed decision.  What's more, if all of these
factors couple with the realization that I have heavy restitutive resposibilities both
criminally and civilly that I can begin making with the job I have available to me, which
would be in the best interests of the victims of my crime, then, I believe that my request
for a full 12-month community confinement, as defined by my eligibility under the acts/
statutes stated herein should be considered seriously without me requesting the courts
to move the Bureau of Prisons in this manner.  I look forward to a timely response on
your decision to grant my request for a full 12-month halfway house allocation, and
I also anticipate that you may receive other letters of support on my behalf in order
to substantiate my statements.

Kind Regards,

Anthony J. Klatch II
55130-018

CC:

Charles Samuels Jr. - Director of Bureau of Prisons
Dr. Butterfield - Head Psychologist of Bureau of Prisons
Residential Re-Entry Center - Tampa, FL (Halfway House)
Domingo Soto - Criminal Lawyer
Robert Knuts - Civil Lawyer
Warden Rathman - FCI Talladega
Judge William Steele - Southern District of Alabama

EXHIBIT A

WARDEN'S CORRESPONDENCE

After talking to my counselor and
Because I am dealing with
the warden directly, this exhibit
is submitted in lieu of any
BP-9 filing.

A.1

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

---------------------------------------------------------------------------------------------------------------

FROM: Warden
TO: 55130018
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/10/2013 09:57:02 AM

*NO! INSUFFICIENT REPLY!*

Your concerns have been addressed.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/10/2013 7:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

I am mystified between the contradiction between your past two responses on this issue. Yesterday morning, you indicated that you would be amenable to placing me in for a full one-year reconsideration should you receive a copy of my job offer, which I asserted that you should already be in possession. Then, you decided to change your mind in that regard later in the day by citing statutory law that is all based on subjective criteria. I have come to learn that my new case manager, Ms. Gaston, was inundated with similar requests yesterday, but I believe that those other requests did not have same grounds as mine. Thus, I hope other inmate's actions did not cause interference with this discussion.

Next, because of the subjectivity within 3621(b), I was hoping that you would find the job offer "Extraordinary and Compelling" enough because I am only seeking an additional 90-120 days. The difference between having a job and not having a job is the number one cause of recidivism according to already referenced research. Further, because I have decided to pursue formal legal action in this regard, I am very familiar with all requirements of 3621(b), and since we have now acquiesced to quoting law, then, my rebuttal in this matter must begin 18 U.S.C. 3621(b), and continue with 42 USC Subsection 17541 (a)(2)(A), 17541 (a)(2)(B), and 17541(a)(2)(D), which suitably rebut my 7-month allocation and make me eligible for a full 12-months.

To begin 18 USC 3621(b)(5) asserts that the CCM and the Referring Institution must take into account and review ALL U.S.S.G. Commission Statements/Recommendations when placing someone for a community confinement allocation. If that held true in my case, then the U.S.S.G. Commission's statement dated March, 2011 is applicable. In that statement, entitled "Alternatives to Incarceration: Specific Offender Characteristics," because of the nature of my crime (white-collar and non-violent) coupled with my mental illness (regardless of severity), I should be considered for the MAXIMUM amount of community confinement time. Furthermore, 42 U.S.C. (a)(2)(A) must be the primary citation here, which states that the MAXIMUM amount of time should be considered for ALL inmates regardless of any of the subjective criteria under 3621(b).

Next, under 42 USC 17541(a)(2)(D), this statute deals with inmates that have physical or mental illness issues. This statute does not delineate between severity of illnesses, and it simply states that ANY inmate suffering from ANY type of condition should be afforded the MAXIMUM amount of community confinement time. Because I have been proactive about mental healthcare since my incarceration, I feel this is extremely applicable in this decision making process, and again, I do not feel Mr. McQueen utilized this in his decision making process despite me discussing this with him. Further, I believe proper mental healthcare is aligned with a reduction in my recidivism risk. However, when I spoke to the interim-head Psychologist, Dr. Stinson, on June 12, 2013, she advised me that she was NOT able to provide me with one-on-one psychological counseling at this time, which I feel is needed for my reintegration with society. Therefore, my psychological needs would be better met outside of the prison environment, where I can seek one-on-one counseling. I feel it is important to note my job offer will also provide me with healthcare coverage.

Lastly, your rebuttal states that I am a low recidivism risk, which seems to, ironically, disqualify me for more halfway house time. Although I understand the the BOP takes higher risk inmates into consideration for more time, I feel that this modus operandi is completely contradictory to statutory law. Under 42 U.S.C. Subsection 17541 (a)(2)(B), inmates that have been proactive in their incarceration should be considered for the MAXIMUM amount of community confinement time. Warden, in your rebuttal, you, yourself, state how proacive I have been in the community by referencing and I quote "good character by participating in programming, the CHOICES program, Rdap..." Therefore, your comments alone validate that I should be considered for the MAXIMUM time under statutory law.

Thus, I believe I have successfully demonstrated an effective rebuttal, and I humbly ask for you to reconsider your decision. To be honest, Warden, I am simply scared about my future should I not have this job to fall back on, which is why I am being relentless in this regard. However, should you not reconsider, I am hopeful the court will also rule favorably on my behalf with the outstanding 2241 submission that I have filed with the Northern District of Alabama.

*A.2*

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

------------------------------------------------------------------------------------------------

Kind Regards,

Anthony J. Klatch II

P.S. (This email chain has reached the 13,000 character limit so any response may require you to start a new email header.)
-----Warden on 9/9/2013 4:52 PM wrote:

>
Mr. Klatch,

The BOP?s goal is to place inmates in RRC's for the amount of time
necessary to provide the greatest likelihood of successful re-entry into
the community. BOP staff are making inmates? pre-release RRC placement
decisions on an individual basis based on the criteria found in 18
U.S.C. ? 3621(b), which includes, but is not limited to, the following:

- the inmate?s need for re-entry services
- the resources and ability of the RRC to meet the offender?s needs
- the nature and circumstances of the inmate?s offense
- the inmate?s history
- any statement by the sentencing court regarding a period of community
confinement
- any potential risks to public safety
- the need for the BOP to manage the inmate population in a responsible
manner
Because the Second Chance Act prescribes the maximum amount of time for
which inmates are eligible for pre-release RRC placement as 12 months,
BOP staff are reviewing each inmate for pre-release RRC placement 17-19
months before the inmate?s projected release date (December 5, 2014). An
RRC placement beyond 6 months should only be approved upon a showing of
an inmate?s extraordinary and compelling re-entry needs. The BOP will
continue to balance each inmate?s individual needs with the agency?s
duty to use its limited resources judiciously and to provide re-entry
services to as many inmates as possible. In your case, you have received
a 7 month RRC placement date on a 60 month sentence. You have shown good
character by participating in programming, the Choices program, RDAP,
and are perceived as having a low chance of recidivism upon release.
After consideration of an increase based upon a job offer, your
placement date of May 1, 2014 will remain and a reconsideration will not
be generated.
I trust I have addressed your concerns.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/9/2013
10:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

Unfortunately, the information listed in your reply is inaccurate and
does not address my concerns. However, I will attempt to provide all
pertinent information in order to move these proceedings to the next
step.

First, in my request to Mr. McQueen, I did discuss, AT LENGTH, the fact
that I had a job awaiting me in Tampa, Florida. However, it appears
that Mr. McQueen did not make note of this in his file. This is the
only explanation I have for why this did not appear in the requst. That
said, because I anticipated an outcome like this based on my experience

$A.3$

----------------------------------------------------------------------------------------

with the Unit Team at the camp, I communicated to my employer,
E-Integrate LLC, that they should have their legal counsel, Dixit
Lawfirm, submit paperwork to various offices. These letters have been
sent to your office, Warden, my case manager Mr. McQueen, the CCM's
office, and the Residential Re-Entry Center. I was not aware that Mr.
McQueen did not receive this letter, nor was I aware that you did not
either. However, that law firm and specifically one of the managing
director's of that law firm, Mr. Shyamie Dixit, forwarded those letters
out at my request in June, and after speaking with one of the managers
at E-Integrate LLC, they have told me that it would be fine for anyone
from the BOP to talk to them or Mr. Dixit directly to confirm this job
offer. Mr. Dixit can be reached at 813-992-8113, which is his personal
cell phone, in order to confirm this. Or, my expected manager, Mr.
Chris Wallace, can be reached at 570-582-9955.

Thus, I believe that the statement in your reply which says "This
information should be suppled to your Unit Team, from the employer, in
order for the Unit Team to review and provide the employment date to the
Residential Re-Entry Office, so a request for additional RRC Placement
can be recommnded" has ALREADY been met. Therefore, I suggest that if
your office, Warden, or the Unit Team is NOT in receipt of "this
information" I kindly ask that you contact Mr. Dixit or Mr. Wallace as
soon as possible so that the request for additional RRC placement can be
made.

Please let me know if there is anything futher I can do to help you in
providing me with the requested relief.

Kind Regards,

Anthony J. Klatch II
55130-018
-----Warden on 9/9/2013 9:37 AM wrote:

>

A review indicates your Unit Team conducted a review of RRC placement
on your case utilizing the criteria as outlined in the Second Chance
Act. After review, a request was submitted to the Residential Reentry
Office for a placement range of 181-270 days (6-9 months). The
Residential Reentry Office approved you for a placement date of May 1,
2014, or 219 days (approximately 7 months).

In your request, you indicate you are in need of additional RRC
placement in order to accommodate employment. Review indicates you did
not indicate any employment plan to your Unit Team at the time of their
review on you for RRC placement. Therefore, the Unit Team review, and
the subsequent request to the Residential Reentry Office, did not
indicate any employment plan while at the RRC.

It is recommended you contact the future employer in order to ascertain
a date in which you will need to report for employment. This information
should be supplied to your Unit Team, from the employer, in order for
the Unit Team to review and provide the employment date to the
Residential Reentry Office, so a request for additional RRC placement
can be recommended.

I trust this response addresses your concerns.

$\mathcal{A}.4$

------------------------------------------------------------------------------------------------------------

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/5/2013
12:07 PM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden Rathman,

I spoke to you briefly at lunch today regarding an issue with my
halfway house time.  As I told you, I was allocated 7 months, which
gives me a release date of May 1, 2014.  However, I am seeking 10-12
months because I have a job awaiting me in Tampa, Florida.  That job is
high paying and in line with my educational level (B.S. Engineering, MBA
Project Management).  However, the job is contractually related, and
that contract begins in January.  If I am unable to start the job when
they contract begins, it puts that job offer at risk.  This HAS BEEN
communicated via a formal job offer from the law office of Shyamie Dixit
to YOU and to the CCM, Jon Gaither of Wildwood, Florida, as well as the
halfway house directly.  What's more, I already have a residence
established for home confinement.

That said, Warden, this issue is extremely important to me.  Having a
successful job upon release is paramount to reduction in recividism
risk, and this has been cited countless times by the Sentencing
Committee and the Probation Office.  Therefore, I have taken legal
action in this matter, by filing a 2241 motion with the Northern
District of Alabama, which required me to name you as the respondent.
Further, I have filed a compassionate release letter with your office
dated August 19, 2013 utilizing subsections 2 and 7 of Program Statement
5050.49.  However, during our brief lunch communication, you stated you
received NEITHER of these letters even though they have been mailed
almost a month hence, and as such, you were going to speak with Mr.
Streeval in this matter.  Should we be able to get my halfway house
allocation increased, I will happily be able to dismiss all outstanding
actions.

In closing, Warden, I have done everything possible to get your
attention on this matter, and I am only offering what is already,
legally allowed under congressional law.  I am not asking for any type
of special commendation because there are inmates at the camp who you
have aided in giving 10+ months of community confinement time.  Lastly,
I graduate from the RDAP program on November 18, 2013, and my earliest
date for release would be December 6, 2013.

Kind regards,

Anthony J. Klatch II
55130-018

EXHIBIT B

CORRESPONDENCE WITH THE CCM FOR THE TAMPA, FLORIDA RRC

June 17, 2013

Jon Gaither
Community Confinement Manager
6303 County Road 500
Wildwood, FL 34785

Anthony J. Klatch II
55130-018
Federal Prison Camp - Talladega
PMB 2000
Talladega, AL 35160

Mr. Gaither:

I understand that you (or one of the parties copied on this letter) are responsible for
allocating my community confinement time ("Halfway House Time"), which was submitted for
your approval on June 12, 2013, by my case manager Mr. McQueen at Federal Prison Camp
Talladega.  I am writing to you today because there are several Extraordinary and Comp-
elling factors that I ask you to take into consideration when making your decision.
Hence, the purpose for writing this letter is to humbly request a full 12-month time
allocation, which is available to me under the Second Chance Act.  Further, I am asking
for what is available under current law, and I believe this request is necessary in order
to eliminate any potential risk for recidivism.

To begin, I wish to illuminate you on the complexities of my case, which is non-violent
and white-collar in nature.  In my case, the United States pursued civil and criminal
action against me.  The civil action, which is out of the Southern District of New York,
has led to a complete asset forfeiture and multi-million dollar fines.  That suit along
with my criminal libailities have left me with no home, no car, no cash, no community
ties to organizations, and a complete razing of my credit.  In fact, even my clothing
and my personal affects have been sold, which leaves me much more indigent than most
minimum-security offenders.  Despite all of this legal action against me, I wish for
you to be made aware that I have cooperated completely with the government on both cases
in order to accept my responsibility.  In fact, my cooperation was called "immense" by
my Federal Sentencing judge, which warranted a 5K.1 recommendation letter from the U.S.
Attorney's office.  I ask for you to take this cooperation into account because I under-
stand that your decision is highly subjective.

Furthermore and most pertinent to this letter, at sentencing, Federal Chief District
Judge Steele ordered that I have mandatory mental healthcare during and post-incarceration
as part of his sentencing directive.  Thankfully, I do not have any debilitating mental ill-
ness, but I do suffer from clinical depression.  As such, Judge Steele felt that dealing
with this illness was necessary for me to seek rehabilitation, and I feel that you should
know that I am on medication for this illness.  That said, my incarceration thusfar has
fulfilled the bare minimum of the Judge's directive, and when I met with the head psych-
ologist at F.P.C. Talladega, Dr. Stinson, on June 12, 2013, she stated that she is NOT
available to offer me one-on-one psychological counseling at this time, which again, is
something I believe is necessary to reduce recidivism.  This anticipated inadequacy is
why I have copied Dr. Butterfield, the head of Psychology for the Bureau of Prisons, as
part of this letter because my family has been proactive about reaching out to her in
order to ensure my proper rehabilitation has been met.  However, what is saddening and
what must be acknowledged is that I have a fear that this illness will be used against
me in your time calculation decision because I have seen numerous inmates receive reduc-
tions in halfway house time for illnesses (mental or physical), whereas, I am seeking
more time, which is available to me under statute law 42 U.S.C. 17541 (a)(1)(D).  This
provision states clearly that the maximum amount of time should be giving for people with
mental illnesses, which although mine is of a manageable nature, it is a disease I have.
Also, I believe 42 U.S.C. 17541 (a)(2)(A) is referable here because it too makes me
eligible for the full 12-month consideration, due to all of my proactive decisions since
my incarceration, which whill be discussed shortly.

1.

R 2

Thusfar, I have listed the primary reasons for seeking a full year in the Tampa Re-Entry center because they reference statutory law, but I also need to make you aware of several other compelling/extraordinary reasons relating to my family, which is very ill. My father is currently suffering from prostate cancer, and he is in need of having my help for his doctor visits. My step-father has bladder cancer. My mother has muscular Dystrophy, and several other ailments including mental illness. What's more, because of their illnesses, I have not seen any of my immediate family for two-years. Prior to my arrest, I also helped my mother financially, and without my support, she is currently at risk of losing her home. Therefore, I have been proactive in obtaining a job despite being incarcerated in order to help her again as soon as I can, and this segues into the next compelling reason I wish to discuss.

Aside from my family desperately needing me, I have a very high education level (B.S. in Engineering and an M.B.A. from Lehigh University). Therefore, I have been able to pro-cure a job with a high starting salary in the Tampa Bay area for a computer consulting firm. It is my understanding that the Re-Entry Center receives 25% of my gross salary, and I feel that this would be a sizable amount of money relative to other placed inmates. Due to this job offer, my income distributed to the re-entry center would be equal to multiple inmates, and with current budgetary constraints, I feel it is appropriate to mention this aspect of my case despite its contradiction to indigency. However, most attention warrant-ing in this discussion is the fact that this job offer is subject to being lost if I am unable to begin on a project starting in January 2014, which means I would need 11 months of community confinement time. What's more, it is my belief that the loss of this off job offer places me at the highest risk of recividism.

Next, I understand that under the current subjective criteria, high-risk inmates are typic-ally eligible for more community confinement time, which I feel is a contradiction to 42 U.S.C. 17541 (a)(2)(B). In fact, I have been nothing but be pro-active hoping to achieve more halfway house time, and when I learned that NOT getting in trouble is a negative factor in that decision, I was appalled because it is directly against law. It was a slap in the face because as a non-violent, white-collar, first-time offender, I personify alternative sentencing options/community confinement criteria, as stated by the United States Sentencing Commission in their March 2010 report entitled "Alternatives to Incarceration: Specific Offender Characteristics." This statement is something that I believe falls under the United States Sentencing Guidelines via 18 U.S.C. 3621(b)(5), which tells the CCM to review all U.S.S.G. Commission statements/recommendations in making your decision. Thus, by referencing that statute, I wish to make you aware of all of my achievements since my incarceration.

I have been chosen by the assisstant warden and the drug treatment specialists here at Talladega to be par tof the Choices program, whereby I go out and speak to the youth at churches and schools regarding my story, and I am actively involved in this. Also, this si something I wish to continue post-incarceration. I have also become a certified GED teacher/tutor, and I have been a volunteer teacher for many higher-level classes. In fact, I have been an Adult COntinuing Education (A.C.E.) instructor, when I was at F.P.C. Atlanta. I have also been proactive with respect to my physical and mental health. I have lost 80 lbs. since my arrest, and my want for psychiatric rehabilitation has been stressed to you already. I have also received the sacrament of confirmation, by a Catholic priest named Father Larry Shinnick of St. Leo's Church in Demopolis, Alabama. Lastly, I have qualified myself and voluntarily committed myself to the 500-hour Residential Drug Abuse Treatment Program (RDAP), with an expected completion date of November 18, 2013, which would be the earliest date that I would be eligible for community confinement in order to satisfy my 3621(E) obligations.

In closing, Mr. Gaither, I believe I have done everything possible in order to show a want to reform my life, which began with my decision to cooperate with the United States in all aspects of my case, and I have submitted several other criteria, which I believe is

2.

highly important for you to make an informed decision.  What's more, if all of these
factors couple with the realization that I have heavy restitutive resposibilities both
criminally and civilly that I can begin making with the job I have available to me, which
would be in the best interests of the victims of my crime, then, I believe that my request
for a full 12-month community confinement, as defined by my eligibility under the acts/
statutes stated herein should be considered seriously without me requesting the courts
to move the Bureau of Prisons in this manner.  I look forward to a timely response on
your decision to grant my request for a full 12-month halfway house allocation, and
I also anticipate that you may receive other letters of support on my behalf in order
to substantiate my statements.

Kind Regards,

Anthony J. Klatch II
55130-018

CC:

Charles Samuels Jr. – Director of Bureau of Prisons
Dr. Butterfield – Head Psychologist of Bureau of Prisons
Residential Re-Entry Center – Tampa, FL (Halfway House)
Domingo Soto – Criminal Lawyer
Robert Knuts – Civil Lawyer
Warden Rathman – FCI Talladega
Judge William Steele – Southern District of Alabama

3.

$B.4$

## EXHIBIT A

### WARDEN'S CORRESPONDENCE

After talking to my Counselor and

Because I am dealing with
the Warden directly, this exhibit
is submitted in lieu of any
BP-9 filing.

1.1

TRULINCS 55130018 - KLATCH, ANTHONY J II - Unit: TDG-X-A

---------------------------------------------------------------------------------------------------

FROM: Warden
TO: 55130018
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/10/2013 09:57:02 AM

*NO! INSUFFICIENT REPLY!*

Your concerns have been addressed.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/10/2013 7:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

I am mystified between the contradiction between your past two responses on this issue. Yesterday morning, you indicated that you would be amenable to placing me in for a full one-year reconsideration should you receive a copy of my job offer, which I asserted that you should already be in possession. Then, you decided to change your mind in that regard later in the day by citing statutory law that is all based on subjective criteria. I have come to learn that my new case manager, Ms. Gaston, was inundated with similar requests yesterday, but I believe that those other requests did not have same grounds as mine. Thus, I hope other inmate's actions did not cause interference with this discussion.

Next, because of the subjectivity within 3621(b), I was hoping that you would find the job offer "Extraordinary and Compelling" enough because I am only seeking an additional 90-120 days. The difference between having a job and not having a job is the number one cause of recidivism according to already referenced research. Further, because I have decided to pursue formal legal action in this regard, I am very familiar with all requirements of 3621(b), and since we have now acquiesced to quoting law, then, my rebuttal in this matter must begin 18 U.S.C. 3621(b), and continue with 42 USC Subsection 17541 (a)(2)(A), 17541 (a)(2)(B), and 17541(a)(2)(D), which suitably rebut my 7-month allocation and make me eligible for a full 12-months.

To begin 18 USC 3621(b)(5) asserts that the CCM and the Referring Institution must take into account and review ALL U.S.S.G. Commission Statements/Recommendations when placing someone for a community confinement allocation. If that held true in my case, then the U.S.S.G. Commission's statement dated March, 2011 is applicable. In that statement, entitled "Alternatives to Incarceration: Specific Offender Characteristics," because of the nature of my crime (white-collar and non-violent) coupled with my mental illness (regardless of severity), I should be considered for the MAXIMUM amount of community confinement time. Furthermore, 42 U.S.C. (a)(2)(A) must be the primary citation here, which states that the MAXIMUM amount of time should be considered for ALL inmates regardless of any of the subjective criteria under 3621(b).

Next, under 42 USC 17541(a)(2)(D), this statute deals with inmates that have physical or mental illness issues. This statute does not delineate between severity of illnesses, and it simply states that ANY inmate suffering from ANY type of condition should be afforded the MAXIMUM amount of community confinement time. Because I have been proactive about mental healthcare since my incarceration, I feel this is extremely applicable in this decision making process, and again, I do not feel Mr. McQueen utilized this in his decision making process despite me discussing this with him. Further, I believe proper mental healthcare is aligned with a reduction in my recidivism risk. However, when I spoke to the interim-head Psychologist, Dr. Stinson, on June 12, 2013, she advised me that she was NOT able to provide me with one-on-one psychological counseling at this time, which I feel is needed for my reintegration with society. Therefore, my psychological needs would be better met outside of the prison environment, where I can seek one-on-one counseling. I feel it is important to note my job offer will also provide me with healthcare coverage.

Lastly, your rebuttal states that I am a low recidivism risk, which seems to, ironically, disqualify me for more halfway house time. Although I understand the the BOP takes higher risk inmates into consideration for more time, I feel that this modus operandi is completely contradictory to statutory law. Under 42 U.S.C. Subsection 17541 (a)(2)(B), inmates that have been proactive in their incarceration should be considered for the MAXIMUM amount of community confinement time. Warden, in your rebuttal, you, yourself, state how proacive I have been in the community by referencing and I quote "good character by participating in programming, the CHOICES program, Rdap..." Therefore, your comments alone validate that I should be considered for the MAXIMUM time under statutory law.

Thus, I believe I have successfully demonstrated an effective rebuttal, and I humbly ask for you to reconsider your decision. To be honest, Warden, I am simply scared about my future should I not have this job to fall back on, which is why I am being relentless in this regard. However, should you not reconsider, I am hopeful the court will also rule favorably on my behalf with the outstanding 2241 submission that I have filed with the Northern District of Alabama.

*A-2*

----------------------------------------------------------------------------------------------------

Kind Regards,

Anthony J. Klatch II

P.S. (This email chain has reached the 13,000 character limit so any response may require you to start a new email header.)
-----Warden on 9/9/2013 4:52 PM wrote:

>
Mr. Klatch,

The BOP?s goal is to place inmates in RRC's for the amount of time
necessary to provide the greatest likelihood of successful re-entry into
the community. BOP staff are making inmates? pre-release RRC placement
decisions on an individual basis based on the criteria found in 18
U.S.C. ? 3621(b), which includes, but is not limited to, the following:

- the inmate?s need for re-entry services
- the resources and ability of the RRC to meet the offender?s needs
- the nature and circumstances of the inmate?s offense
- the inmate?s history
- any statement by the sentencing court regarding a period of community
confinement
- any potential risks to public safety
- the need for the BOP to manage the inmate population in a responsible
manner
Because the Second Chance Act prescribes the maximum amount of time for
which inmates are eligible for pre-release RRC placement as 12 months,
BOP staff are reviewing each inmate for pre-release RRC placement 17-19
months before the inmate?s projected release date (December 5, 2014). An
RRC placement beyond 6 months should only be approved upon a showing of
an inmate?s extraordinary and compelling re-entry needs. The BOP will
continue to balance each inmate?s individual needs with the agency?s
duty to use its limited resources judiciously and to provide re-entry
services to as many inmates as possible. In your case, you have received
a 7 month RRC placement date on a 60 month sentence. You have shown good
character by participating in programming, the Choices program, RDAP,
and are perceived as having a low chance of recidivism upon release.
After consideration of an increase based upon a job offer, your
placement date of May 1, 2014 will remain and a reconsideration will not
be generated.
I trust I have addressed your concerns.

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/9/2013
10:24 AM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden,

Unfortunately, the information listed in your reply is inaccurate and
does not address my concerns. However, I will attempt to provide all
pertinent information in order to move these proceedings to the next
step.

First, in my request to Mr. McQueen, I did discuss, AT LENGTH, the fact
that I had a job awaiting me in Tampa, Florida. However, it appears
that Mr. McQueen did not make note of this in his file. This is the
only explanation I have for why this did not appear in the requst. That
said, because I anticipated an outcome like this based on my experience

A.3

--------------------------------------------------------------------------------------------------

with the Unit Team at the camp, I communicated to my employer,
E-Integrate LLC, that they should have their legal counsel, Dixit
Lawfirm, submit paperwork to various offices. These letters have been
sent to your office, Warden, my case manager Mr. McQueen, the CCM's
office, and the Residential Re-Entry Center. I was not aware that Mr.
McQueen did not receive this letter, nor was I aware that you did not
either. However, that law firm and specifically one of the managing
director's of that law firm, Mr. Shyamie Dixit, forwarded those letters
out at my request in June, and after speaking with one of the managers
at E-Integrate LLC, they have told me that it would be fine for anyone
from the BOP to talk to them or Mr. Dixit directly to confirm this job
offer. Mr. Dixit can be reached at 813-992-8113, which is his personal
cell phone, in order to confirm this. Or, my expected manager, Mr.
Chris Wallace, can be reached at 570-582-9955.

Thus, I believe that the statement in your reply which says "This
information should be suppled to your Unit Team, from the employer, in
order for the Unit Team to review and provide the employment date to the
Residential Re-Entry Office, so a request for additional RRC Placement
can be recommnded" has ALREADY been met. Therefore, I suggest that if
your office, Warden, or the Unit Team is NOT in receipt of "this
information" I kindly ask that you contact Mr. Dixit or Mr. Wallace as
soon as possible so that the request for additional RRC placement can be
made.

Please let me know if there is anything futher I can do to help you in
providing me with the requested relief.

Kind Regards,

Anthony J. Klatch II
55130-018
-----Warden on 9/9/2013 9:37 AM wrote:

>

A review indicates your Unit Team conducted a review of RRC placement
on your case utilizing the criteria as outlined in the Second Chance
Act. After review, a request was submitted to the Residential Reentry
Office for a placement range of 181-270 days (6-9 months). The
Residential Reentry Office approved you for a placement date of May 1,
2014, or 219 days (approximately 7 months).

In your request, you indicate you are in need of additional RRC
placement in order to accommodate employment. Review indicates you did
not indicate any employment plan to your Unit Team at the time of their
review on you for RRC placement. Therefore, the Unit Team review, and
the subsequent request to the Residential Reentry Office, did not
indicate any employment plan while at the RRC.

It is recommended you contact the future employer in order to ascertain
a date in which you will need to report for employment. This information
should be supplied to your Unit Team, from the employer, in order for
the Unit Team to review and provide the employment date to the
Residential Reentry Office, so a request for additional RRC placement
can be recommended.

I trust this response addresses your concerns.

*A. 4*

---------------------------------------------------------------------------------------------------------------

>>> ~^!"KLATCH, ~^!ANTHONY J II" <55130018@inmatemessage.com> 9/5/2013
12:07 PM >>>
To: Legal, 2241, Halfway House, Compassionate Release
Inmate Work Assignment: CED Tutor

Warden Rathman,

I spoke to you briefly at lunch today regarding an issue with my
halfway house time. As I told you, I was allocated 7 months, which
gives me a release date of May 1, 2014. However, I am seeking 10-12
months because I have a job awaiting me in Tampa, Florida. That job is
high paying and in line with my educational level (B.S. Engineering, MBA
Project Management). However, the job is contractually related, and
that contract begins in January. If I am unable to start the job when
they contract begins, it puts that job offer at risk. This HAS BEEN
communicated via a formal job offer from the law office of Shyamie Dixit
to YOU and to the CCM, Jon Gaither of Wildwood, Florida, as well as the
halfway house directly. What's more, I already have a residence
established for home confinement.

That said, Warden, this issue is extremely important to me. Having a
successful job upon release is paramount to reduction in recividism
risk, and this has been cited countless times by the Sentencing
Committee and the Probation Office. Therefore, I have taken legal
action in this matter, by filing a 2241 motion with the Northern
District of Alabama, which required me to name you as the respondent.
Further, I have filed a compassionate release letter with your office
dated August 19, 2013 utilizing subsections 2 and 7 of Program Statement
5050.49. However, during our brief lunch communication, you stated you
received NEITHER of these letters even though they have been mailed
almost a month hence, and as such, you were going to speak with Mr.
Streeval in this matter. Should we be able to get my halfway house
allocation increased, I will happily be able to dismiss all outstanding
actions.

In closing, Warden, I have done everything possible to get your
attention on this matter, and I am only offering what is already,
legally allowed under congressional law. I am not asking for any type
of special commendation because there are inmates at the camp who you
have aided in giving 10+ months of community confinement time. Lastly,
I graduate from the RDAP program on November 18, 2013, and my earliest
date for release would be December 6, 2013.

Kind regards,

Anthony J. Klatch II
55130-018

EXHIBIT B

CORRESPONDENCE WITH THE CCM FOR THE TAMPA, FLORIDA RRC

June 17, 2013

Jon Gaither
Community Confinement Manager
6303 County Road 500
Wildwood, FL 34785

Anthony J. Klatch II
55130-018
Federal Prison Camp - Talladega
PMB 2000
Talladega, AL 35160

Mr. Gaither:

I understand that you (or one of the parties copied on this letter) are responsible for allocating my community confinement time ("Halfway House Time"), which was submitted for your approval on June 12, 2013, by my case manager Mr. McQueen at Federal Prison Camp Talladega.  I am writing to you today because there are several Extraordinary and Compelling factors that I ask you to take into consideration when making your decision. Hence, the purpose for writing this letter is to humbly request a full 12-month time allocation, which is available to me under the Second Chance Act.  Further, I am asking for what is available under current law, and I believe this request is necessary in order to eliminate any potential risk for recidivism.

To begin, I wish to illuminate you on the complexities of my case, which is non-violent and white-collar in nature.  In my case, the United States pursued civil and criminal action against me.  The civil action, which is out of the Southern District of New York, has led to a complete asset forfeiture and multi-million dollar fines.  That suit along with my criminal libailities have left me with no home, no car, no cash, no community ties to organizations, and a complete razing of my credit.  In fact, even my clothing and my personal affects have been sold, which leaves me much more indigent than most minimum-security offenders.  Despite all of this legal action against me, I wish for you to be made aware that I have cooperated completely with the government on both cases in order to accept my responsibility.  In fact, my cooperation was called "immense" by my Federal Sentencing judge, which warranted a 5K.1 recommendation letter from the U.S. Attorney's office.  I ask for you to take this cooperation into account because I understand that your decision is highly subjective.

Furthermore and most pertinent to this letter, at sentencing, Federal Chief District Judge Steele ordered that I have mandatory mental healthcare during and post-incarceration as part of his sentencing directive.  Thankfully, I do not have any debilitating mental illness, but I do suffer from clinical depression.  As such, Judge Steele felt that dealing with this illness was necessary for me to seek rehabilitation, and I feel that you should know that I am on medication for this illness.  That said, my incarceration thusfar has fulfilled the bare minimum of the Judge's directive, and when I met with the head psychologist at F.P.C. Talladega, Dr. Stinson, on June 12, 2013, she stated that she is NOT available to offer me one-on-one psychological counseling at this time, which again, is something I believe is necessary to reduce recidivism.  This anticipated inadequacy is why I have copied Dr. Butterfield, the head of Psychology for the Bureau of Prisons, as part of this letter because my family has been proactive about reaching out to her in order to ensure my proper rehabilitation has been met.  However, what is saddening and what must be acknowledged is that I have a fear that this illness will be used against me in your time calculation decision because I have seen numerous inmates receive reductions in halfway house time for illnesses (mental or physical), whereas, I am seeking more time, which is available to me under statute law 42 U.S.C. 17541 (a)(1)(D).  This provision states clearly that the maximum amount of time should be giving for people with mental illnesses, which although mine is of a manageable nature, it is a disease I have. Also, I believe 42 U.S.C. 17541 (a)(2)(A) is referable here because it too makes me eligible for the full 12-month consideration, due to all of my proactive decisions since my incarceration, which whill be discussed shortly.

1.

P. 1

Thusfar, I have listed the primary reasons for seeking a full year in the Tampa Re-Entry center because they reference statutory law, but I also need to make you aware of several other compelling/extraordinary reasons relating to my family, which is very ill.  My father is currently suffering from prostate cancer, and he is in need of having my help for his doctor visits.  My step-father has bladder cancer.  My mother has muscular Dystrophy, and several other ailments including mental illness.  What's more, because of their illnesses, I have not seen any of my immediate family for two-years.  Prior to my arrest, I also helped my mother financially, and without my support, she is currently at risk of losing her home.  Therefore, I have been proactive in obtaining a job despite being incarcerated in order to help her again as soon as I can, and this segues into the next compelling reason I wish to discuss.

Aside from my family desperately needing me, I have a very high education level (B.S. in Engineering and an M.B.A. from Lehigh University).  Therefore, I have been able to pro-cure a job with a high starting salary in the Tampa Bay area for a computer consulting firm.  It is my understanding that the Re-Entry Center receives 25% of my gross salary, and I feel that this would be a sizable amount of money relative to other placed inmates.  Due to this job offer, my income distributed to the re-entry center would be equal to multiple inmates, and with current budgetary constraints, I feel it is appropriate to mention this aspect of my case despite its contradiction to indigency.  However, most attention warrant-ing in this discussion is the fact that this job offer is subject to being lost if I am unable to begin on a project starting in January 2014, which means I would need 11 months of community confinement time.  What's more, it is my belief that the loss of this off job offer places me at the highest risk of recidivism.

Next, I understand that under the current subjective criteria, high-risk inmates are typic-ally eligible for more community confinement time, which I feel is a contradiction to 42 U.S.C. 17541 (a)(2)(B).  In fact, I have been nothing but be pro-active hoping to achieve more halfway house time, and when I learned that NOT getting in trouble is a negative factor in that decision, I was appalled because it is directly against law.  It was a slap in the face because as a non-violent, white-collar, first-time offender, I personify alternative sentencing options/community confinement criteria, as stated by the United States Sentencing Commission in their March 2010 report entitled "Alternatives to Incarceration: Specific Offender Characteristics."  This statement is something that I believe falls under the United States Sentencing Guidelines via 18 U.S.C. 3621(b)(5), which tells the CCM to review all U.S.S.G. Commission statements/recommendations in making your decision.  Thus, by referencing that statute, I wish to make you aware of all of my achievements since my incarceration.

I have been chosen by the assisstant warden and the drug treatment specialists here at Talladega to be par tof the Choices program, whereby I go out and speak to the youth at churches and schools regarding my story, and I am actively involved in this.  Also, this si something I wish to continue post-incarceration.  I have also become a certified GED teacher/tutor, and I have been a volunteer teacher for many higher-level classes.  In fact, I have been an Adult COntinuing Education (A.C.E.) instructor, when I was at F.P.C. Atlanta.  I have also been proactive with respect to my physical and mental health.  I have lost 80 lbs. since my arrest, and my want for psychiatric rehabilitation has been stressed to you already.  I have also received the sacrament of confirmation, by a Catholic priest named Father Larry Shinnick of St. Leo's Church in Demopolis, Alabama.  Lastly, I have qualified myself and voluntarily committed myself to the 500-hour Residential Drug Abuse Treatment Program (RDAP), with an expected completion date of November 18, 2013, which would be the earliest date that I would be eligible for community confinement in order to satisfy my 3621(E) obligations.

In closing, Mr. Gaither, I believe I have done everything possible in order to show a want to reform my life, which began with my decision to cooperate with the United States in all aspects of my case, and I have submitted several other criteria, which I believe is

2.

highly important for you to make an informed decision.  What's more, if all of these factors couple with the realization that I have heavy restitutive resposibilities both criminally and civilly that I can begin making with the job I have available to me, which would be in the best interests of the victims of my crime, then, I believe that my request for a full 12-month community confinement, as defined by my eligibility under the acts/ statutes stated herein should be considered seriously without me requesting the courts to move the Bureau of Prisons in this manner.  I look forward to a timely response on your decision to grant my request for a full 12-month halfway house allocation, and I also anticipate that you may receive other letters of support on my behalf in order to substantiate my statements.

Kind Regards,

Anthony J. Klatch II
55130-018

CC:

Charles Samuels Jr. - Director of Bureau of Prisons
Dr. Butterfield - Head Psychologist of Bureau of Prisons
Residential Re-Entry Center - Tampa, FL (Halfway House)
Domingo Soto - Criminal Lawyer
Robert Knuts - Civil Lawyer
Warden Rathman - FCI Talladega
Judge William Steele - Southern District of Alabama

3.